# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 44
Richard Altman,
      Respondent,
    v.
285 West Fourth LLC,
      Appellant.

Jeffrey Turkel, for appellant.
Lawrence W. Rader, for respondent.
Rent Stabilization Association of New York City, Inc., et al.; Urban Justice Center, et al.; and Make the Road New York et al., <u>amici</u> <u>curiae</u>.

DiFIORE, Chief Judge:

The issue on this appeal is whether the 20% vacancy increase should be included when calculating the legal regulated rent for purposes of determining whether the subject apartment has reached the $2,000 deregulation threshold in the Rent Stabilization Law. We conclude that the vacancy increase must be included in that calculation.

- 1 -

In November 2003, plaintiff Richard Altman entered into a sublease with Keno Rider, who had been the tenant of the subject apartment since 1993. Rider had a rent-stabilized lease with the prior landlord at a legal regulated rent of $1,829.49 per month. In December 2004, the prior landlord commenced a nonpayment proceeding against Altman and Rider. In March 2005, Altman and the prior landlord entered into a stipulation of settlement, under which the parties agreed that Rider would surrender all rights to the apartment and the landlord would deliver a new lease to Altman. Along with the new lease, Altman executed a "Deregulation Rider for First Unregulated Tenant." The Deregulation Rider stated that the apartment was not rent-stabilized "because the legal rent was or became $2000 or more on vacancy" after the statutory vacancy increase was added to the last regulated rent. In August 2005, the landlord removed the apartment from registration with the Division of Housing and Community Renewal (DHCR), based on "high rent vacancy."

Defendant 285 West Fourth (the owner) subsequently purchased the premises and, in 2007, entered into a fair market renewal lease with Altman at a monthly rent of $2,600. At that time, the parties also executed an agreement acknowledging that the apartment was not subject to rent stabilization. Under the terms of the agreement, Altman agreed to refrain from challenging the nonregulated status of the apartment and further agreed that, if he did so, it would be "conclusively presumed" that he had entered the agreement with the intent to obtain its benefits by fraud in the inducement.

Beginning in 2008 and continuing until early 2014, the owner commenced a series of nonpayment proceedings against Altman. In his answers to the petitions for

nonpayment, Altman did not challenge the apartment's deregulated status. Then, in June 2014, Altman brought this action seeking a declaration that the premises are subject to rent stabilization, an injunction requiring defendant to offer Altman a rent-stabilized lease, a determination of lawful rent and a money judgment for the rent overcharge. The owner answered and raised several affirmative defenses, as well as two counterclaims seeking sanctions and punitive damages. Altman moved to dismiss the owner's counterclaims and certain affirmative defenses, and the owner cross-moved for summary judgment dismissing the complaint.

Supreme Court granted the owner's cross motion for summary judgment dismissing the complaint. The court declared that Altman was not entitled to the protection of rent stabilization because the apartment had become exempt in March 2005 pursuant to Rent Stabilization Law § 26-504.2 (a) when the legal regulated rent – including the 20% vacancy increase – exceeded $2,000. Supreme Court granted Altman's motion only to the extent of dismissing the owner's counterclaims for sanctions and punitive damages.

The Appellate Division modified by denying the owner's cross motion for summary judgment in its entirety, granting Altman summary judgment, and declaring that Altman's tenancy was entitled to the protection of rent stabilization and, as so modified, affirmed (127 AD3d 654 [1st Dept 2015]). The Court held that, although the owner was entitled to a 20% rent increase for Altman's initial lease, that increase did not serve to deregulate the apartment because the rent was not over $2,000 at the time the prior tenant vacated the premises. The Court remanded the matter to Supreme Court for calculation of the rent overcharge due to Altman.

Supreme Court entered judgment in Altman's favor in the amount of $165,363.80, including treble damages and prejudgment interest, and set the legal rent at $1,829.49 until the owner registered the premises with DHCR as a rent-stabilized apartment.   The Appellate Division affirmed (143 AD3d 415 [1st Dept 2016]).  We granted the owner leave to appeal (29 NY3d 903 [2017]) and now reverse.

Under the Rent Stabilization Law, rent-stabilized apartments are subject to certain statutory rent increases, including a 20% increase for a two-year lease upon vacancy (Rent Stabilization Law § 26-511 [c] [5-a]).  In addition, Rent Stabilization Law § 26-504.2 (a) provides for the deregulation of rent-stabilized apartments that reach a threshold legal regulated rent.  Specifically, as relevant here, deregulation will apply to:

> "any housing accommodation which becomes vacant on or after [April 1, 1997] and before the effective date of the rent act of 2011 and where at the time the tenant vacated such housing accommodation the legal regulated rent was two thousand dollars or more per month; or, for any housing accommodation which is or becomes vacant on or after the effective date of the rent regulation reform act of 1997 and before the effective date of the rent act of 2011, with a legal regulated rent of two thousand dollars or more per month"

 (Rent Stabilization Law § 26-504.2 [a] [emphasis added]).*  The Appellate Division relied on the first clause, which plainly states that the relevant consideration for deregulation purposes is the legal regulated rent "at the time the tenant vacated" the apartment.  By contrast, the second clause provides that the key consideration when there is a vacancy is the legal regulated rent, without reference to the rent at the time of the tenant's vacatur.

---

* The vacancy at issue occurred in 2005.  Thus, we do not address the effect of the 2015 amendments to the statute (L 2015, ch 20, pt A, § 10).

Given that the second clause is an alternative to the first (preceded by "or"), it must mean something different from the first clause – i.e., something other than the legal regulated rent at the time the tenant vacated the apartment. Thus, it is reasonable to read the plain language of the second clause to refer to the legal regulated rent (including the available statutory increases) applicable to the apartment <u>after</u> the tenant's vacancy.

Although the statutory language is generally the best indication of the legislature's intent, "the legislative history of an enactment may also be relevant and 'is not to be ignored, even if words be clear'" (<u>Riley v County of Broome</u>, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 124). Here, the legislative history could not be clearer and leaves no doubt that the legislature intended to include the vacancy increase. Notably, in 1997, the New York City Council had enacted Local Law No. 13 to clarify its intent that "a vacant housing accommodation becomes deregulated only where the maximum rent or legal regulated rent was two thousand dollars or more <u>at the time the tenant vacated such housing accommodation</u>" (Rep of Comm on Housing and Buildings, 1997 NY City Legis Ann at 44-45).

The State Legislature acted quickly in response to Local Law No. 13 by enacting the Rent Regulation Reform Act of 1997, effective June 19, 1997, to amend the high rent deregulation statute by adding the second clause – "or any housing accommodation which is or becomes vacant on or after the effective date of the rent regulation reform act of 1997 with a legal regulated rent of two thousand dollars or more per month" (L 1997, ch 116). The bill jacket demonstrates that the legislative intent was specifically to counter the provision added by the City Council in Local Law No. 13, stating that "[d]econtrol will be

allowed at any time the vacant apartment has a maximum rent of $2,000 or more. The bill also eliminates restrictions imposed by the New York City Council, which currently prevent vacancy bonuses and owner improvements from being considered in reaching the $2,000 threshold" (Bill Jacket, L 1997, ch 116 [emphasis added]; see also Governor's Mem approving L 1997, ch 116).

Thus, in the present case, the 20% increase should have been considered in determining the legal regulated rent at the time of the vacancy and, as a result, the subject apartment was properly deregulated in 2005. Altman's remaining arguments relating to this issue are without merit. In light of this disposition, we do not address the rent overcharge award.

Accordingly, the order appealed from and prior order of the Appellate Division insofar as brought up for review should be reversed, with costs, and the motion for summary judgment dismissing the complaint granted.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order appealed from and prior order of the Appellate Division insofar as brought up for review reversed, with costs, and motion for summary judgment dismissing the complaint granted. Opinion by Chief Judge DiFiore. Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.

Decided April 26, 2018